FILED BY ___ D.C.
05 AUG 26 AM 6:45
THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

JONATHAN T. HALFACRE,

Plaintiff,

v.

No. 04-2483 Ma P

THE HOME DEPOT, a/k/a HOME DEPOT, U.S.A., INC.,

Defendant.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DISMISSING PLAINTIFF'S SUIT

Plaintiff Jonathan T. Halfacre ("Halfacre") brings claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) et seq. ("Title VII"), for hostile work environment discrimination, disparate treatment and retaliation. Halfacre also brings state law claims of discrimination and retaliation in violation of the Tennessee Human Rights Act, T.C.A. § 4-21-101 et seq.[1] Before the court is defendant Home Depot U.S.A., Inc.'s ("Home Depot") motion for summary judgment, filed on May 31, 2005. Halfacre filed a response on July 11, 2005. Home Depot filed a reply on July 26, 2005. For the following reasons, the court GRANTS Defendant's motion for summary judgment and DISMISSES Plaintiff's suit.

[1] An additional state law claim for intentional infliction of emotional distress was dismissed by an agreed order entered on August 30, 2004.

This document entered on the docket sheet in compliance with Rule 58 and/or 79(a) FRCP on 8-30-05

25

## I. Jurisdiction

Because this case arises under federal law, the court has jurisdiction under 28 U.S.C. § 1331. The court has supplemental jurisdiction under 28 U.S.C. § 1367(a) to adjudicate state law claims arising from a common nucleus of operative facts.

## II. Background

The following facts are undisputed or stated in the light most favorable to the Plaintiff. Halfacre, an African-American, was hired by the Memphis Fire Department in April, 1979. (Compl. at ¶ 2; Halfacre Depo. at 8.) He is currently employed by the Memphis Fire Department as a driver. (Halfacre Depo. at 12.) The Memphis Fire Department requires Halfacre to work three non-consecutive 24-hour shifts every nine days. (Id. at 28-31.) Halfacre's work schedule with the fire department is flexible; if he needs to substitute out of a shift he may switch shifts with any other qualified driver who has not worked during the previous 12 hours and who agrees to the switch. (Id. at 29; Halfacre Aff. at ¶ 18.)

Halfacre is also employed by Home Depot at Store No. 729 in Collierville, Tennessee.[2] (Halfacre Depo. at 85.) He is a full-time associate in Store No. 729's paint department. (Id.) Halfacre has worked for Home Depot since August 19, 1996.[3] (Id. at 50.) The position of paint department supervisor at Store No. 729 became

---

[2] Halfacre is currently on sick leave from Home Depot, as well as the Memphis Fire Department, because of a pinched nerve in his neck which required surgery in November, 2004. (Halfacre Depo. at 23.)

[3] Halfacre quit his employment with Home Depot for roughly six months in 2000. (Halfacre Depo. at 53, 85.)

available in early 2003. (Halfacre Aff. at ¶¶ 16-17.) Halfacre expressed interest in obtaining the department supervisor position. (Halfacre Depo. at 93-94.) Halfacre was not interviewed for the position and did not receive the position. (Id. at 99.) The position was awarded to Dave Nicholas, who is white. (First Charge of Discrimination.)

Ginnie McDaniels, the Assistant Store Manager at Store No. 729, told Halfacre in April, 2003, that he "would make a great manager," and that "[w]e would love to have you in management," but that she was concerned about his "fire department availability." (Halfacre Depo. at 99-100.) Matt Murphy, the Store Manager at Store No. 729, also told Halfacre in July, 2003, that he was not considered for the promotion because of the requirements of his job with the Memphis Fire Department. (Id. at 100.) According to Bob Acklie, a Regional Human Resource Manager for Home Depot, Home Depot requires that its Department Supervisors "be available to work a fully flexible schedule according to the needs of Home Depot's business." (Acklie Decl. at ¶ 4.) The Home Depot Sales Department Supervisor job description states that one of the minimum qualifications a candidate must possess is the ability "to work a flexible schedule." (Rec. Appx. in Supp. of Def.'s Mot. for Summ. J., Tab 6.) Halfacre's work schedule with the Memphis Fire Department is flexible and does not prevent him from working at Store No. 729 whenever he is needed by Home Depot. (Halfacre Aff. at ¶ 18.)

In several instances, Home Depot has ignored the requirement

that a Department Supervisor have a "fully flexible schedule." Home Depot allowed Reco Watson to be a Department Supervisor although he was attending college classes which conflicted with his work schedule. (Halfacre Depo. at 103-04.) Reco Watson is African-American. (Id. at 104.) Home Depot allowed Art Pruitt to be an Assistant Manager although he had a second job at Federal Express. (Id. at 106-07.) Art Pruitt is African-American. (Id. at 106.) Home Depot allowed William Boone to be a Department Supervisor although he had a second job as a fireman in Collierville, Tennessee. (Id. at 161-62.) William Boone is African-American. (Id. at 162.)

In one instance, Home Depot prevented an employee from serving as a Department Supervisor because her schedule was not sufficiently flexible. Lisa Yancey was a Department Supervisor who enrolled in school. (Id. at 104.) Home Depot forced Yancey to "step down because they wasn't [sic] willing to work with her." (Id.) Lisa Yancey is white. (Id. at 105.)

On July 10, 2003, Halfacre filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on his race. The Charge of Discrimination "particulars" state:

> I was denied a promotion to the position of Department Manager of the paint department on or about July 8, 2003. I am classified as an Associate and have been re-employed since August 2000.
>
> I believe I have been discriminated against because of my race (Black) in violation of Title VII of the Civil Rights Act of 1964, as amended, because my job performance in the paint department has been consistently above average. A less qualified white employee from a different department was chosen for the position.

Halfacre was issued a "right to sue letter" on March 31, 2004, and subsequently, filed this suit, Case No. 04-2483, on June 29, 2004.

In September, 2003, after he had filed his first Charge of Discrimination, Halfacre received a performance evaluation in which he was given an "overall performance code" of "P." (Rec. Appx. in Supp. of Def.'s Mot. for Summ. J., Tab 7.) The universe of possible "overall performance codes" on Home Depot's performance evaluations is: "O" for "outstanding," "V" for "achiever," "P" for "performer," and "I" for "improvement required." (Id.) On past evaluations Halfacre had received higher performance scores. (Halfacre Depo. at 179.) The performance evaluation also gave Halfacre a "potential code of "+." (Rec. Appx. in Supp. of Def.'s Mot. for Summ. J., Tab 7.) The universe of possible "potential codes" is "*" for "high potential," "+" for "promotable," "=" for "grow in position," and "-" for "placement issue." (Id.) Following the evaluation, Halfacre received a pay increase of 55 cents per hour, or five percent of his salary. (Halfacre Depo. at 132.)

Halfacre contends that he was underrated in his performance evaluation in retaliation for filing his first Charge of Discrimination. On March 5, 2004, Halfacre filed a second Charge of Discrimination with the EEOC alleging discrimination based on retaliation. The Charge of Discrimination "particulars," as amended on June 30, 2004, state:

> I have been employed with the above company since September 2000 as an Associate. I filed a Charge of Discrimination against the company on July 10, 2003. I have since received a poor evaluation on 9-27-03. I discussed my concerns with the managers and human

> resources employees and it was agreed that the evaluation would be revised. The final evaluation I received on 12-19-03 is as poor as the original evaluation. My evaluations affect my pay increase.
>
> I believe that the company is retaliating against me because I filed the earlier charge of discrimination.

Halfacre was issued a "right to sue letter" on September 2, 2004, and subsequently filed suit on December 2, 2004. That suit was docketed as Case No. 04-2982. Halfacre's two lawsuits were consolidated under the original case number, Case No. 04-2483.

**III. Summary Judgment Standard**

The party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986). The moving party can meet this burden by pointing out to the court that the respondents, having had sufficient opportunity for discovery, have no evidence to support an essential element of their case. See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. A genuine issue for trial exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party opposing the motion must "do more than simply show that there is some metaphysical doubt as

to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, the nonmoving party must present "concrete evidence supporting its claims." Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989). The district court does not have the duty to search the record for such evidence. See InterRoyal Corp. v. Sponseller, 889 F.2d 108, 110-11 (6th Cir. 1989). Nonmovants have the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in their favor. See id.

## IV. Analysis

Halfacre claims that Home Depot engaged in hostile work environment discrimination, disparate treatment, and retaliation, in violation of Title VII. Home Depot has moved for summary judgment on each of Halfacre's Title VII claims.

### A. Hostile Work Environment

Home Depot argues that Halfacre's hostile work environment claim should be dismissed because it is outside the scope of his EEOC Complaint. (Def.'s Mem. in Supp. at 21.) Halfacre's response to Home Depot's motion does not address this argument. Title VII creates a cause of action for employment discrimination only after a plaintiff has pursued an administrative remedy, such as filing a Charge of Discrimination with the EEOC. 42 U.S.C. §

2000(e)-5(f)(1); Love v. Pullman Co., 404 U.S. 522, 523 (1972). The cause of action stated in the plaintiff's complaint must fall "within the scope of the EEOC investigation that is reasonably expected to grow out of the charge of discrimination that was filed with the EEOC." Bray v. Palm Beach Co., 907 F.2d 150, 1990 WL 92672, at *1 (6th Cir. 1990) (citing EEOC v. McCall Printing Corp., 633 F.2d 1232, 1235 (6th Cir. 1980)). Courts are expected to construe administrative complaints liberally in determining whether a claim in a Title VII complaint was "reasonably expected to grow out of the charge of discrimination." Haithcock v. Frank, 958 F.2d 671, 675-76 (6th Cir. 1992). Liberal construction of the EEOC complaint is required because "technicalities are particularly inappropriate in a statutory scheme [like Title VII] in which laymen, unassisted by trained lawyers, initiate the process." Love, 404 U.S. at 527; see also Boykin v. Michigan Dept. of Corrections, 211 F.3d 1268, 2000 WL 491512, at *2 (6th Cir. 2000) ("[w]e may quickly dispose of defendants' scope argument, as we liberally construe the scope of a charge originally filed with EEOC").

Neither of Halfacre's EEOC Charges of Discrimination states that he was subjected to a racially hostile work environment. An investigation into the work environment at Home Depot Store No. 729 could not reasonably be expected to grow out of an investigation into a single allegation of disparate treatment or a single allegation of retaliation. See, e.g., Dorsey v. Pinnacle Automation Co., 278 F.3d 830, 838 (8th Cir. 2002) (holding that a hostile work

environment claim would not be within the scope of an investigation into a claim of a single allegation of failure to promote). Consequently, the court lacks subject matter jurisdiction of Halfacre's hostile work environment claim.

**B. Disparate Treatment**

Halfacre alleges that Home Depot is liable under Title VII for racially discriminatory disparate treatment when he was denied a promotion to head the paint department. "To base a claim on disparate treatment, the plaintiff must show discriminatory motive. Such proof can be established by direct evidence or may be inferred based on a prima facie showing of discrimination." Huguley v. General Motors Corp., 52 F.3d 1364, 1370 (6th Cir. 1995).

Direct evidence is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor." Bartlik v. U.S. Dep't of Labor, 73 F.3d 100, n. 5 (6th Cir. 1996)(internal citations omitted). Stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself do not constitute direct evidence of discrimination. Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (1989). To the contrary, "[w]hat is required is ... direct evidence that decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision." Id. Halfacre has provided no direct evidence of discrimination. None of the evidence he has presented directly links a discriminatory motive to any of the employment decisions.

In the absence of direct evidence of discrimination, disparate treatment claims are analyzed under the shifting burden analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and as refined in Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981). Under that analysis, a plaintiff must first prove, by a preponderance of the evidence, a prima facie case of discrimination. See Burdine, 450 U.S. at 252. If the plaintiff meets this burden, the burden shifts to the defendant to produce a legitimate, non-discriminatory reason for the adverse employment action. See id. at 252-53. If the defendant meets this burden, the burden then shifts back to the plaintiff to show that the reasons offered by the defendant are a pretext for discrimination. See id. at 253. Throughout this analysis, the ultimate burden of proving the intent to discriminate, by a preponderance of the evidence, always remains with the plaintiff. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993).

To establish a prima facie case of discrimination, a plaintiff must prove that (1) he is a member of a protected class, (2) he suffered an adverse employment action, (3) he was qualified for the position, and (4) he was replaced with someone outside the protected class or was treated less favorably than similarly-situated persons outside the protected class. Manzer v. Diamond Shamrock Chem. Co., 29 F.3d 1078, 1081 (6th Cir. 1994). Home Depot first argues that Halfacre has failed to satisfy element (2) of the prima facie case: that he was qualified for the position. Home

Depot claims that Halfacre was not qualified because Department Supervisors must have a "flexible schedule," and Halfacre's employment with the Memphis Fire Department meant that his schedule was not sufficiently flexible. (Pl.'s Mem. in Supp. at 9-10.) Halfacre, however, states in his affidavit that "I have and currently am able to work a flexible schedule at all times at Home Depot." (Halfacre Aff. at ¶ 18.) Viewing the evidence in the light most favorable to Halfacre, a jury could conclude that Halfacre had a sufficiently flexible schedule to be qualified for the position of Department Supervisor.

Because Halfacre has made out a prima facie case of disparate treatment, the burden shifts to Home Depot to prove that the decision not to consider Halfacre for the position of Department Supervisor was based "on a legitimate consideration, and not an illegitimate one such as race." Furnco Const. Corp. v. Waters, 438 U.S. 567, 577 (1978). This burden, however, is slight. To meet the burden, and dispel the adverse inference from a prima facie showing under McDonnell Douglas, Home Depot "need only articulate some legitimate, nondiscriminatory reason for the employee's rejection." Id. at 578 (internal quotes and citations omitted).

Home Depot states that its "legitimate, nondiscriminatory reason" for not considering Halfacre for a promotion was Home Depot's belief that Halfacre's job with the Memphis Fire Department prevented his schedule from being flexible enough to be a Department Supervisor. (Def.'s Mem. in Supp. at 12.) The record contains evidence which supports Home Depot's stated reason. Bob

Acklie, a Regional Human Resource Manager for Home Depot, stated that Home Depot requires that its Department Supervisors "be available to work a fully flexible schedule according to the needs of Home Depot's business." (Acklie Decl. at ¶ 4.) The Home Depot Sales Department Supervisor job description states that one of the minimum qualifications a candidate must possess is the ability "to work a flexible schedule." (Rec. Appx. in Supp. of Def.'s Mot. for Summ. J., Tab 6.) Ginnie McDaniels, the Assistant Store Manager, and Matt Murphy, the Store Manager, told Halfacre that he was not considered for the promotion because of the requirements of his job with the Memphis Fire Department. (Halfacre Depo. at 99-100.) Home Depot has prevented employees from working as Department Supervisors in the past because of concerns about the affect their out-of-work commitments could have on the flexibility of their schedules: Lisa Yancey was a white Department Supervisor who was forced to step down from her position when she enrolled in school. (Id. at 104-05.) Home Depot has met its burden of articulating a "legitimate, nondiscriminatory reason" for its decision not to consider Halfacre for a promotion.

Halfacre has the burden of presenting evidence from which a jury could conclude that Home Depot's stated reason for not promoting him was a pretext for discrimination. Halfacre first argues that the fact that Home Depot has allowed other employees with substantial out-of-work obligations to be Department Supervisors is evidence that Home Depot's stated reason for not promoting him was pretextual. Halfacre, however, has only presented

evidence of black employees who were permitted to be Department Supervisors despite substantial commitments outside of their jobs at Store 729. (Id. at 103-07, 161-62.) Further, the only employee identified in the record who was not permitted to be a Department Supervisor because of out-of-work commitments was white. (Id. at 104-05.) In the light most favorable to Halfacre, the evidence shows that Home Depot inconsistently enforced its policy of requiring that Department Supervisor's have fully flexible schedules. It does not support the inference that Home Depot used the fact that Halfacre was employed by the Memphis Fire Department as a pretext for racial discrimination.

Halfacre also argues that Home Depot's proferred reason for not promoting him is pretextual because Home Depot did not tell Halfacre the reason he was not promoted until after he had filed his EEOC Charge of Discrimination. (Pl.'s Resp. at 31-32.) Halfacre contends that Home Depot came up with its allegedly pretextual excuse only after the Charge had been filed. Halfacre, however, testified in his deposition that Ginnie McDaniels, the Assistant Store Manager, told Halfacre in April, 2003, that he "would make a great manager," and that "[w]e would love to have you in management," but that she was concerned about his "fire department availability." (Halfacre Depo. at 99-100.) Halfacre filed his Charge of Discrimination on July 10, 2003.

There is no evidence that Home Depot's proffered reason for not promoting Halfacre, that he had a second job which prevented his schedule from being flexible enough to be a Department

Supervisor, was a pretext for racial discrimination. Therefore, the court grants Home Depot's motion for summary judgment on Halfacre's claim of disparate treatment in violation of Title VII.

**C. Retaliation Claim**

Halfacre alleges that Home Depot is liable under Title VII for retaliation. Absent direct evidence of retaliation, claims for retaliation are subject to the same analytical framework as claims for discrimination. See Wrenn v. Gould, 808 F.2d 493, 500-02 (6th Cir. 1987). That is, if a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment action. Id. at 501. If the defendant does so, the plaintiff can prevail only by showing that the articulated reason is false or pretextual. A prima facie case of retaliation is established when a plaintiff shows that (1) she engaged in a protected activity, (2) his protected activity was known by the defendant, (3) the defendant thereafter took an employment action adverse to the plaintiff, and (4) there was a causal connection between the protected activity and the adverse employment action. Id. at 500.

Home Depot argues that Halfacre has not made out a prima facie case of retaliation because Halfacre has not satisfied the third prong of the prima facie case, that he was subject to an adverse employment action. (Def.'s Reply Brief at 12.) Halfacre claims that his September, 2003, performance evaluation was an adverse employment action because he received a "P" rating, and on past evaluations he had received higher ratings. (Pl.'s Resp. at 41.)

An employee suffers an adverse employment action when there is

"a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Holt v. Morgan, 79 Fed. Appx. 139, 141 (6th Cir. 2003) (citing Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)). "A performance evaluation that is lower than an employee feels is warranted is not an adverse employment action sufficient to state a claim of discrimination." Holt, 79 Fed. Appx. at 141. Halfacre's "overall performance code" of "P," or "performer" on his September, 2003, performance evaluation does not constitute an adverse employment action under Holt. The performance evaluation stated that Halfacre was "promotable," and Halfacre received a 55 cent raise following the evaluation. Thus, Halfacre's evaluation score of "P" was not "a significant change in employment status," and the court grants Home Depot's motion for summary judgment on Halfacre's claim of retaliation.

**V. State Law Claims**

"A district court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims." Musson Theatrical, Inc. v. Federal Express Corp., 89 F.3d 1244, 1254 (6th Cir. 1996) (citation omitted). "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... (3) the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Consequently, "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." Id. at 1254-55 (citing Carnegie-Mellon Univ. v.

Cohill, 484 U.S. 343, 350 n. 7 (1988)); see also Brandenburg v. Housing Authority of Irvine, 253 F.3d 891 (6th Cir. 2001) ("In fact, the usual course is for the district court to dismiss state-law claims without prejudice if all federal claims are disposed of on summary judgment."). Because all of Halfacre's federal claims have been dismissed, the court declines to exercise supplemental jurisdiction over the remaining state law claims and dismisses those claims without prejudice.

**VI. Conclusion**

For the foregoing reasons, the court GRANTS Defendant's motion for summary judgment on Plaintiff's Title VII claims and DISMISSES Plaintiff's state law claims without prejudice.

So ordered this 25th day of August 2005.

SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 25 in case 2:04-CV-02483 was distributed by fax, mail, or direct printing on August 30, 2005 to the parties listed.

---

Keith D. Frazier
OGLETREE DEAKINS NASH SMOAK & STEWART
424 Church St.
Ste. 800
Nashville, TN 37219

Kaye G. Burson
RUTLEDGE & RUTLEDGE
1053 W. Rex Road
Ste. 101
Memphis, TN 38119

Honorable Samuel Mays
US DISTRICT COURT